IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUIZ FOOD PRODUCTS, INC.,** a California corporation, </br></br>      **Plaintiff**, </br></br>   v. </br></br> **CAMINO REAL FOODS, INC.,** a California corporation, </br></br>      **Defendant.** | 1:09-CV-1731 AWI SMS </br></br> **ORDER RE: PRELIMINARY INJUNCTION** |

## I. History[1]

Plaintiff Ruiz Food Products produces frozen Mexican food products under the brand "El Monterey." Defendant Camino Real Foods also produces frozen Mexican food products under the brand "Las Campanas." Both companies have been selling frozen burritos and chimichangas in multipacks of eight to ten for a number of years. The packaging of these products also changed for both companies over the years. In 2009, Defendant undertook a major redesign of its packaging. Sales suffered and Defendant underwent a second redesign, shipping product bearing the new packaging design in August or September 2009. Plaintiff objected to this design, claiming it was confusingly similar to its own packaging. Defendant withdrew the design

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

in question. Plaintiff filed suit on October 1, 2009, claiming its trade dress rights had been violated under common law, the Lanham Act, and California's Business and Professions Code §17200. With the complaint, Plaintiff sought an ex parte temporary restraining order preventing Defendant from using the withdrawn packaging or any packaging confusingly similar to its own. The court denied the request for failure to show that the motion needed to be filed on an ex parte basis, converting the motion to a preliminary injunction with full notice to Defendant. On October 2, 2009, Defendant recalled the products bearing the withdrawn packaging. Defendant also designed a new proposed packaging for its multipack burritos and chimichangas. The packaging displaying the proposed design is currently being manufactured and is not yet in use. Defendant expects to ship product bearing the proposed packaging starting in early November 2009; Defendant has withdrawn from the marketplace pending delivery of the proposed packaging. Upon review of the design, Plaintiff objected to the new proposed packaging. The parties' briefing in opposition and reply have centered on Defendant's newly proposed packaging; the withdrawn packaging is no longer the subject of this motion for preliminary injunction. At this point, Plaintiff seeks an injunction to prevent Defendant from using any packaging that is similar to its own. Plaintiff does not point to any specific mark or visual factor, arguing instead that the overall appearance of Defendant's newly proposed packaging infringes upon Plaintiff's trade dress rights. Oral argument was held on October 26, 2009.

## II. Legal Standards

"Trade dress refers to the total image of a product and may include features such as size, shape, color, color combinations, texture or graphics." International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993), citations and quotations omitted. Title 15 U.S.C. §1125(a)(1) of the Lanham Act protects trade dress rights, stating: "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin,

2

false or misleading description of fact, or false or misleading representation of fact, which- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

"A plaintiff is entitled to a preliminary injunction in a trademark case when it demonstrates either (1) a combination of 'probable success on the merits' and 'the possibility of irreparable injury' or (2) the existence of 'serious questions going to the merits' and that 'the balance of hardships tips sharply in his favor.'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-5 (9th Cir. 2000), quoting Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985). "To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." Art Attacks Ink, LLC v. MGA Enter. Inc., 581 F.3d 1138 (9th Cir. 2009), citations omitted.

With trademark/trade dress suits, likelihood of confusion is the indispensible element. "[I]n order to show a probability of success in the causes of action for trademark infringement, false designation of origin and unfair competition, [parties] need show that a likelihood of confusion exists." Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985), citations omitted. "[I]rreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim." Brookfield Communs., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1066 (9th Cir. 1999), citing Metro Publ'g, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993). "[A] plaintiff is therefore entitled to a preliminary injunction in a trademark case simply when it shows a likelihood of confusion." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).

### III. Discussion

Plaintiff argues that its packaging design is nonfunctional, has acquired secondary meaning and that Defendant's proposed design is so similar that it causes a likelihood of confusion. Defendant disagrees with all three contentions.

Defendant argues Plaintiff's packaging is functional, deserving no legal protection: "The competing colors, fonts, pictures and layout are typical of Mexican food designs and are pervasively used by other producers of Mexican-style food products. Therefore, these features are purely functional and not entitled to trade dress protection." Doc. 9, Opposition, at 8:6-9. Defendant's argument on this point borders on the absurd. "[P]ackage design is functional if it is essential to the product's use or if it affects the cost or quality of the article." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 614 (9th Cir. 1989), citations omitted. While individual features may be functional (such as stating the content of the product or providing nutritional information), the overall appearance of Plaintiff's packaging is plainly not functional. "We examine trade dress as a whole to determine its functionality; functional elements that are separately unprotectable can be protected together as part of a trade dress." Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 842 (9th Cir. 1987); cf. Official Airline Guides v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993) (discussing "OAG Traval Planner" publication title the Ninth Circuit said, "the district court analyzed the strength of OAG's mark by examining its component parts and found that the term 'Travel Planner,' standing alone, is descriptive and therefore weak. But under the anti-dissection rule, the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace"). "[T]he possible varieties of advertising display and packaging are virtually endless...[ the plaintiff] seeks only to protect the combination of particular hues of these colors, arranged in certain geometric designs, presented in conjunction with a particular style of printing, in such fashion that, taken together, they create a distinctive visual impression. This would leave innumerable other

combinations of the same colors or other colors that could be assembled in a multitude of patterns to be used with uncounted type faces." <u>Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.</u>, 659 F.2d 695, 703 (5th Cir. 1981).

Defendant argues that Plaintiff has failed to show secondary meaning in its trade dress: "Without specific consumer evidence, it is impossible for Plaintiff to meet the stringent burden of proof." Doc. 9, Opposition, at 7:12-13.  "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." <u>Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.</u>, 198 F.3d 1143, 1151 (9th Cir. 1999), citations omitted.  In this case, Plaintiff states that "Since 2004, Ruiz has spent an average of approximately $15 million to $20 million per year on advertising and promoting its El Monterey products in its current packaging, including on the internet. Since 2004, Ruiz has sold an average of $120 million per year in El Monterey burrito and chimichanga products using its current packaging." Doc. 3, Part 6, Hannay Declaration, at 2:4-8.  The fact that Defendant's withdrawn packaging plainly mimicked Plaintiff's packaging also provides support for secondary meaning. At this stage, the court finds sufficient evidence of secondary meaning.

"The Ninth Circuit has developed an eight-factor test to assess likelihood of confusion: 1) strength of the allegedly infringed mark; 2) proximity or relatedness of the goods; 3) similarity of the sight, sound, and meaning of the marks; 4) evidence of actual confusion; 5) degree to which the marketing channels converge; 6) type of goods and degree of care consumers are likely to exercise in purchasing them; 7) intent of the defendant in selecting the allegedly infringing mark; and 8) likelihood that the parties will expand their product lines." <u>Metro Pub. v. San Jose Mercury News</u>, 987 F.2d 637, 640 (9th Cir. 1993), citations omitted.  These are commonly called Sleekcraft factors after <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979).  A trial court need not formally consider all of these factors at the preliminary injunction stage. <u>Apple</u>

Computer, Inc. v. Formula International, Inc., 725 F.2d 521, 526 (9th Cir. 1984).

Plaintiff's and Defendant's goods are basically identical and are distributed through the same kinds of marketing channels (supermarkets and convenience stores). At oral argument, Defendant stated that they supply twenty-six retail chains of which only two simultaneously sell Plaintiff's goods. However, Defendant also stated its sales are only a small fraction of Plaintiff's sales and it is actively seeking to expand. Even if there are only a limited number of retail establishments in which the two are sold side by side at this time, it is likely that the parties' expansions will bring them into direct physical comparison in the future. As the packaging is only proposed and not yet in the marketplace, there is no way of measuring actual confusion.

The parties disagree as to the degree of care the consumer will have in choosing between Plaintiff's and Defendant's products. The proper standard is "the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 628 (8th Cir. 1987), quoting Scott v. Mego Int'l, Inc., 519 F. Supp. 1118, 1133 n.17 (D. Minn. 1981). Plaintiff admits "the vast majority of the consuming public does not spend a lot of time deciding on what kind of frozen Mexican food to buy because it is a relatively inexpensive product." Doc. 3, Part 6, Hannay Declaration, at 2:9-11. Defendant agrees, stating "Most of our consumer's purchases result from price, variety, impulse, availability, and taste preference." Doc. 10, Cross Declaration, at 2:9-10. The suggestion appears to be that for many consumers, the brand is irrelevant as the goods are perceived as largely interchangeable. "A casual buyer who did not buy by the brand might pick up one can for the other. But in that case, he is not the plaintiff's prospective customer. On the contrary, he is in the market for Chinese food and his selection of one in preference to the other does not involve the type of choice as to which the law is anxious to avoid confusing deception." Chun King Sales, Inc. v. Oriental Foods, Inc., 136 F. Supp. 659, 665 (S.D. Cal. 1955), reversed on other grounds. There is very little evidence as to the degree of care a consumer exercises. For the purposes of this motion, the court assumes as a default a

supermarket shopper who makes purchasing decisions quickly but is nevertheless familiar with his/her brand and seeks it out. See Henri's Food Products Co. v. Kraft, Inc., 717 F.2d 352, 355 (7th Cir. 1983) ("a supermarket shopper who will make a selection quickly and without careful examination").

The parties also disagree as to whether Defendant's intentionally tried to imitate Plaintiff's packaging with the proposed package. Plaintiff believes Defendant is trying to confuse consumers as evidenced by Defendant's withdrawn packaging, which was strikingly similar to Plaintiff's packaging. Relative to the withdrawn packaging, "intentional and exact copying of the marks" is a strong factor weighing in favor of Plaintiff. Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1078 (9th Cir. 2006). Defendant argues the proposed packaging design is an evolution of its pre-2009 packaging and evidence suggests that Defendant resolved upon some visual elements of the proposed packaging independently from Plaintiff. Indeed, the proposed packaging resembles Defendant's pre-2009 packaging about as much as it resembles Plaintiff's packaging. Based on the conflicting evidence, the court does not give this factor much weight.

For this motion, the court focuses on the third factor, the visual similarity of Defendant's proposed packaging to Plaintiff's packaging. Unless the two are sufficiently similar, there would be no likelihood of confusion. Plaintiff describes its own packaging as follows:

> in horizontal packages, with: bright color schemes coordinated to flavors, a picture of two burritos (or chimichangas) on a plate, the words BURRITOS or CHIMICHANGAS in distinctive lettering in the upper right portion of the package (a fanciful 'dot' to the 'I'), the brand name 'El Monterey' in the upper left portion of the package, the words 'Family Pack' on the left side of the package (on Plaintiff's large packages), and the heating instructions on the lower left portion of the package

Doc. 3, Memo, at 2:9-14. Broadly, these are also the factors Plaintiff claims are confusingly similar on Defendant's withdrawn packaging; Plaintiff also points out that the withdrawn packaging uses a background pattern and puts nutritional information on the right side, like its own packaging. See Doc. 2, Complaint, at 2:18-26. Plaintiff has not specified its objections to

Defendant's proposed packaging aside from the general statement that "Defendant's proposed packaging is still confusingly similar to Plaintiff's distinctive El Monterey brand packaging...the design elements on Defendant's proposed packaging design, taken as a whole, are visually and confusingly similar to Plaintiff's El Monterey brand packaging design." Doc. 12, Reply, at 2:25-28. The court examines the listed visual factors with reference to Defendant's proposed packaging, keeping in mind that it is the totality of the look that constitutes the trade dress.

Both Plaintiff's packaging and Defendant's proposed packaging are oriented horizontally. However, the evidence submitted by both parties shows that Las Campanas had been using horizontal packaging for a number of years. Defendant states "Other than the last year, we have always used horizontal packaging for our family pack products, at least for the past eighteen (18) years." Doc. 10, Cross Declaration, at 2:11-14. Indeed, horizontal and vertical orientation appear to be the only reasonable options for packaging. Defendant provides examples of several other companies that use a horizontal orientation to their packaging. See Doc. 10, Part 2. "[A] design is legally functional, and thus unprotectible, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection." Two Pesos v. Taco Cabana, 505 U.S. 763, 775 (1992), citations omitted.

As with Plaintiff's packaging, Defendant's proposed packaging has solid color backgrounds coordinating to the various flavors. "[O]ver time, customers may come to treat a particular color on a product or its packaging (say, a color that in context seems unusual, such as pink on a firm's insulating material or red on the head of a large industrial bolt) as signifying a brand. And, if so, that color would have come to identify and distinguish the goods - i.e. 'to indicate' their 'source' - much in the way that descriptive words on a product ." Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 163 (1995). Here, there is a logical reason to the color scheme: flavor. Use of color to represent flavor must be considered functional. CytoSport, Inc. v. Vital Pharms., Inc., 617 F. Supp. 2d 1051, 1079 (E.D. Cal. 2009). Further, "The use of one color

merely as a background on a package...is usually rejected as having no trademark significance." First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1383 (9th Cir. 1987), quoting 1 J. McCarthy, Trademarks and Unfair Competition, 7:17.  The background must be considered in the context of the overall look of the package.  Defendant argues that it "introduced their solid color packaging before Ruiz did.....Las Campanas and Tina's were clearly the first to change their packages to solid color. These colors are the same colors both Ruiz and Las Campanas use on their packaging: namely red, blue, yellow, green and purple.", Doc. 11, Lunsford Declaration, at 2:6-15.  Plaintiff does not dispute this contention.  This fact constitutes some evidence that Defendant did not intentionally copy Plaintiff's packaging in promulgating the proposed package.  In analyzing likelihood of confusion, the fact that Defendant used the visual element first is of limited value.  With trade dress infringement actions, the prior use of one or two elements by a defendant may be considered but is not determinative as it is the totality of the look that matters. See Clairol Inc. v. Consway Co., 1974 U.S. Dist. LEXIS 6338, *10-11 (C.D. Cal. 1974) (though Defendants had "prior use of a design consisting of the profile of a female's head above a horizontally displayed bower of flowers....The combined elements of similarity between plaintiff's design and defendant's design on its herbal essence shampoo label are a consequence of changes made by defendant long after plaintiff widely advertised and promoted its own female head design"); cf. Adidas Am., Inc. v. Kmart Corp., 2006 U.S. Dist. LEXIS 49766, *32 (D. Or. June 15, 2006) ("defendants' argument cannot be premised on the prior use of a confusingly similar mark, but only on prior use of 'the mark'").

      Plaintiff and Defendant use a pattern on top of this solid background.  Plaintiff superimposes discrete circular swirls on the background and Defendant uses lines meeting at right angles, forming a maze-like pattern.  Defendant provides the image of a package from another company, Casa Mamita, that uses solid background colors coordinated to flavors with an intricate pattern. See Doc. 10, Part 2.  As a general matter, "evidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively

9

weak and entitled to a narrower scope of protection." General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627-28 (8th Cir. 1987). If in the existing market several product packages look alike, then there is less likely to be confusion as consumers should be on guard as to similar packaging.

The proposed packaging features two items (burritos or chimichangas) as the central image, as does Plaintiff's packaging. However, there are a number of visual differences between the two. First, Defendant's image has the two items open such that the fillings are visible; Plaintiff opens one item while leaving the other closed. Second, the angle from which the images were photographed are different. On Defendant's proposed packaging, the shot is from above the plate, more vertical than horizontal. Plaintiff's image is one from the side at a slant, more horizontal than vertical. Third, Defendant's items are oriented vertically on the plate while Plaintiff's are oriented at an angle. Defendant provides the image of a package from another company, Posada, that uses a cental image of two items, one open and one closed, from a side angle similar to Plaintiff's central image. See. Doc. 12, Part 2, at 2. Fourth, Defendant uses a black plate while Plaintiff uses a reddish brown plate. Fifth, Defendant's image is centered on the proposed package while Plaintiff's image is set off to the right. Sixth, Defendant's items are garnished while Plaintiff's are unadorned. Plaintiff specifically notes that "We put an image on the packaging of two of the advertised food items on a plate with no garnishes or other side items." Doc. 12, Part 3, Whiteside Declaration, at 2:8-9. Sprigs of cilantro and hot peppers flank the two items on Defendant's proposed packaging.

Both packages contain a large, bright yellow word reading either "burritos" or "chimichangas." The word itself (its meaning) is functional as it simply names the contents of the package but the style must be considered. On Plaintiff's package, the word is spelled out in all capital letters and in the top right. On Defendant's proposed package, only the first letter is capitalized and the word is centered in the top half of the package. The fonts used are different. Significantly, Plaintiff has a fanciful dot on top of its "I"s that looks like a sun; Defendant uses a normal dot for its "i"s. Based on an exhibit provided by Plaintiff, it appears Defendant has

10

reverted to the font and design used on its pre-2009 packaging; on that prior packaging, the word "burritos" or "chimichangas" was also colored bright yellow with only the first letter capitalized and centered on the front. See Doc. 12, Part 3, at 25. This is evidence that cuts against Plaintiff's claim of intentional infringement. Both companies put their logo on the front of their packaging. Plaintiff places it on the top left where it forms a counterpoint to "burritos" or "chimichangas." Defendant places its logo on the top of the package, in the center above "burritos" or "chimichangas."  The "El Monterey" logo is prominently placed, while the "Las Campanas" logo is slightly less prominent. No one would mistake the "El Monterey" logo with the "Las Campanas" logo. When prominently placed, logos should be considered an element which helps to prevent consumer confusion. See General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987); Henri's Food Products Co. v. Kraft, Inc., 717 F.2d 352, 355-56 (7th Cir. 1983).

      Plaintiff notes that both companies put nutritional information to the right and "family pack" and heating instructions to the left of the central image. Plaintiff's nutritional information is black text on a yellow label. Defendant's is white text on a green label. The content of the labels is functional as both tout "0 grams trans fat," a health claim made on the packaging of other companies as well. See Doc. 10, Part 2, at 1. The heating instructions for the two packages look alike; they are in the same part of the package in similar small white script. However, the writing is so small and faint that it makes no real visual impression. Plaintiff's package has "family pack" in yellow on two lines. Defendant's proposed package has the term "9 count family pack" in white writing on three lines. Both companies appear to use similar fonts and only capitalize the first letter of the words. Interestingly, Plaintiff provided magazine articles that prominently exhibited its product packaging in the past. The court notes that in four of the articles, from March, May, and November 2007, the packaging does not use the term "family pack" but rather the term "10 pack." See Doc. 12, Part 3, at 7, 9, 19, and 22. An article from December 2008 shows use of the term "family pack." See Doc. 12, Part 3, at 12. Plaintiff provided another exhibit that purported to compare the two companies packaging in the past.

Doc. 12, Part 3, at 25.  Plaintiff states "The images on the time line are true and correct copies of our beef and bean package compared to defendant's as they have existed over the recent past."  Doc. 12, Part 3, Whiteside Declaration, at 3:4-5.  Through the images, Plaintiff claims its packaging has not been changed since 2006 and has always included the term "family pack" instead of "10 pack."  It would appear that Plaintiff has made a misrepresentation to the court on this matter.  The same exhibit shows that Defendant was using the term "family pack" to the left of the central image in its packaging in 2006. Doc. 12, Part 3, at 25.  Again, it would appear that one of the visual elements Plaintiff cites may have been used by Defendant first, cutting against the argument that Defendant is intentionally copying Plaintiff's packaging.

Taken as a whole, the court concludes that the two packages are probably dissimilar enough that consumers are not likely to be confused.  Overall, the visual features that might cause confusion are the solid color background and the words "burritos" or "chimichangas" in large, bright yellow letters.  However, at least one other frozen Mexican food product company (as did Defendant in its pre-2009 packaging) uses a solid background color so consumers are probably on notice that a solid background color does not automatically denote Plaintiff's products.  Both packages are dominated by the words "burritos" or "chimichangas" in yellow lettering, but their case, font, and placement on the package differ.  The logos of the two companies are relatively prominent and different.  The central image of two items are also distinct in presentation.  The fact that they are on different colored plates and oriented differently immediately jump out.  Nutritional information and the term "family pack" flank the central image, but in different colored designs and writing.  With a glance, supermarket shoppers who are looking for their specific brand should be able to differentiate between the two packages.

The court does not find a likelihood of confusion based on the evidence presented.  As Plaintiff can not show that it is likely to prevail on the merits of its claim with regard to Defendant's proposed packaging, no preliminary injunction is warranted at the present time.  This decision is pointedly not clear cut.  As more evidence is gathered, Plaintiff is welcome to

renew its motion for preliminary injunction.  Especially useful would be evidence of actual confusion and clarification regarding the degree of care frozen Mexican food products consumers use in making their purchasing decisions.

### IV. Order

Plaintiff's motion for preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated:    **October 29, 2009**                      **/s/ Anthony W. Ishii**
                                                                  CHIEF UNITED STATES DISTRICT JUDGE

13